IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| MUSTAFA OZSUSMLAR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:11-cv-844-DGW |
| | ) | |
| DR. DAVID SZOKE, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

**WILKERSON, Magistrate Judge:**

Now pending before the Court is the Motion for Summary Judgment filed by Defendant, Dr. David Szoke, on March 14, 2015 (Doc. 56) and the response thereto, filed on January 5, 2015 (Doc. 76). For the reasons set forth below, the Motion is **GRANTED**.

### BACKGROUND

Plaintiff, Mustafa Ozsusamlar, was incarcerated at the United States Penitentiary in Marion, Illinois (USP Marion) from August 4, 2008 to July 16, 2012 (Mustafa Ozsusamlar Affidavit, ¶ 3, Doc. 76-1). Plaintiff and Defendant stipulate that Defendant, Dr. David Szoke, was the Clinical Director at USP Marion from November 12, 2006 to August 1, 2009, and again from August 29, 2010, to April 6, 2013 (Doc. 56 at 2; Doc. 46 at 2). During this time period, Plaintiff suffered from serious medical problems including kidney stones, inguinal hernia, dental problems, and a "head infection." Plaintiff alleges that Defendant was deliberately indifferent to Plaintiff's medical needs involving his kidney stones, inguinal hernia, dental problems and head infection.

All facts are construed in a light most favorable to Plaintiff. *Miller v. Gonzalez*, 761 F.3d 822, 826 (7th Cir. 2014). The parties do not disagree as to a number of facts regarding Plaintiff's

medical conditions and the treatment received; much of the statement of facts is undisputed. Any material disagreement, however, will be highlighted below.

*Kidney Stones*

In May, 2008, prior to Plaintiff's arrival at USP Marion in August, 2008, he was diagnosed with possible kidney stones, it was recommended that he undergo a CT scan, and he was prescribed 800 mg of Motrin, a pain medication. After Plaintiff's arrival at USP Marion he was initially examined by Dr. Szoke and has kidney issues were discussed – there does not appear to be a dispute that Plaintiff's pain medication was discontinued. (Ozsusamlar Aff. ¶ 6). From 2008 to 2011, Plaintiff was treated by other medical professionals at the prison who ordered urinalyses (which revealed no abnormalities) and discussed Plaintiff's kidney stones (David Szoke Declaration ¶¶ 4-6, Doc. 56-5). On June 30, 2009, Plaintiff was prescribed Ibuprofen, 600 mg, for dental pain (Doc. 56-7, p. 51). On August 31, 2010, Plaintiff indicated that he passed 3 small kidney stones and that he had pain in his lower back; he was referred to a "mid-level practitioner" (i.e. physician's assistant) for a follow-up examination (*Id.* 98).

On January 20, 2011, Plaintiff wrote a note to Dr. Szoke indicating that he was in significant pain (a 9 or 10 on a 10-point scale) and that the Ibuprofen was not effective – he identified 3 ailments, kidney stones, hernia, and "pain and difficulty walking" and requested medical attention (*Id.* 203). In a handwritten note, Dr. Szoke stated that surgical intervention was not recommended, that the Ibuprofen would be discontinued, and that he should save the kidney stone and present it to sick call (Szoke Dec. ¶ 7; Doc. 56-7, p. 203).[1] On April 28, 2011, Plaintiff

---

[1] It is undisputed that at the next clinical encounter with another provider, Plaintiff "voices no complaints at this time" and is "doing well on curret [sic] meds" (Doc. 56-7, p. 170). On April 11, 2011, Plaintiff appeared at sick call with complaints of pain (right foot pain) and an x-ray was ordered (*Id.* 167-168).

appeared at sick call complaining of pain "daily when lying down, and when walking" (Doc. 56-7, p. 164). Plaintiff was again prescribed Ibuprofen (400 mg, 3 times per day for 21 days as need) "only for significant pain, not for routine usage," and an x-ray was ordered (*Id.* 166). The Ibuprofen was refilled on June 20, 2011 and Plaintiff was referred for a urology consultation because of "chronic kidney stones" (*Id.* 161-2).

The urology consultation, however, was "deferred" by USP Marion's Utilization Review Committee (of which Dr. Szoke was the Chair) in favor of an evaluation by the Clinical Director or a Staff Physician, i.e. Dr. Szoke (*Id.* 190). It does not appear from the medical records that such an evaluation occurred with Dr. Szoke; instead, Plaintiff was seen by other medical personnel on August 11, 2011 and October 25, 2011 with respect to his kidney stones (Doc. 56-6, p. 5-6).

When Plaintiff next saw Dr. Szoke, on December 21, 2011, he requested "Lithotripsy," a procedure used to break up and remove kidney stones (Szoke Dec. ¶ 15). Dr. Szoke informed Plaintiff that "kidney stones are treated symptomatically, unless they are not passed" and that his kidney stones would be managed "emergently" (*Id.* 15, Doc. 56-7, p. 249). This course of treatment was continued through 2012 – Plaintiff was not referred to an urologist nor was he scheduled for surgery.

Dr. Szoke states, and Plaintiff does not dispute, that when Plaintiff was transferred in July 16, 2012 to the Federal Correctional Institution at Fairton, New Jersey, the course of treatment remained unchanged (Szoke Dec. ¶ 19). Dr. Szoke further states that the treatment of a kidney stone depends on its size, what it is made of, and whether it is obstructing the urinary tract. If the stone passes through the urinary tract in less than 24 hours and is not accompanied by a fever or kidney infection, no intervention is required except pain medication and the intake of a lot of

fluids. Dr. Szoke further states that Plaintiff spontaneously passed his kidney stones, was never observed to be in acute distress, and that "while I do not doubt that he may have experienced pain during that process, I believed Plaintiff was receiving appropriate medical treatment" (*Id.* 20).

### *Inguinal Hernia*

Plaintiff's declaration includes a few opaque factual allegations regarding Defendant's treatment of his inguinal hernia. The parties agree, however, that Dr. Szoke examined Plaintiff on August 8, 2008 and diagnosed an inguinal hernia that was "non-surgical . . .non incarcerated . . . and reducable [sic]" (*Id.* 21). This diagnosis was noted by other medical personnel on August 28, 2008 (Doc. 56-6, p. 1) and by Dr. Ladove on October 29, 2008 (*Id.* 2). However, Plaintiff asserts that during Dr. Szoke's August 2008 examination, he was told that his "left testicle problem [i.e. the inguinal area] would be fixed within four to six months" (Ozsusamlar Dec. ¶ 8). Plaintiff also claims that Defendant ordered him to "write a sick call request" so that a Physician Assistant could x-ray his hernia (*Id*. 9). Plaintiff then contends that, on June 20, 2012, almost four years later, Defendant finally approved a hernia operation (*Id.* 26). Defendant states that his surgical referral was based on his "examination at the time," Plaintiff's chronic complaints, and "giving Plaintiff the benefit of the doubt" (Szoke Dec. ¶ 27). The Utilization Review Committee approved a surgery consultation; however, Plaintiff was transferred before the consultation occurred (*Id.*; Doc. 56-7, p. 305).

Medical records show that Plaintiff did eventually receive a surgical consultation at FCI Fairton (Doc. 56-7, p. 309). Plaintiff's hernia was confirmed "reducible" and the consulting surgeon noted that "surgery is not a priority" (*Id.* 306, 309).

### *Dental Complaints*

In his Declaration, Plaintiff states that he suffered for eight months and lost two teeth due

to improper dental treatment (Ozsusamlar Dec. ¶¶ 27-28). Plaintiff asserts that though he received multiple x-rays of his mouth and was seen multiple times in the dental clinic, he was not seen promptly by a dentist (*Id.* 30).

In his deposition, Defendant acknowledged that there was an extended period at USP Marion when no dentist was available on-site (David Szoke Deposition pp. 19-20; Doc. 76-2). However, Defendant goes on to assert that dental emergencies were treated by an on-site dental hygienist and dental care would be considered by an off-site dentist who would then schedule the inmate for a dentist's visit at the institution (*Id.* 21). In his deposition, Defendant testified that all medical staffing needs, including dental staff, were handled by prison administrators (*Id.* 23). Defendant also testified that the Bureau of Prisons sets policy for the manner in which inmates are to seek dental treatment (*Id.* 87). It is undisputed that Plaintiff was seen by a dental hygienist on November 14, 2008, July 1, 2009, July 9, 2009, August 4, 2009, August 17, 2009, and September 17, 2010 (Szoke Dec. ¶ 33). It is further undisputed that Plaintiff was examined or treated by a dentist on November 18, 2008, October 27, 2009, November 10, 2009, November 16, 2009, February 5, 2010, August 20, 2010, September 30, 2010, June 23, 2011, and August 9, 2011 (*Id.* 34).

Defendant states that on July 14, 2009 he saw Plaintiff for a dental problem that had lasted for 2 days (*Id.* 35). He prescribed an antibiotic and a pain reliever and told Plaintiff to send in a request for dental care (*Id.*). The medical records further reference a visit on July 14, 2009 (Doc. 56-7, p. 116). Plaintiff declares, however, that he did not see Dr. Szoke on that date (Ozsusamlar Dec. ¶¶ 21, 33). Rather, he indicates that he received an anti-biotic, but no pain medication, on July 9, 2009 (*Id.* 32).

*"Head Infection"*

Plaintiff contends that beginning around the end of August, 2008, he lost hearing in his ear, had severe body pain, was "completely congested," and suffered from chills and watering eyes (Ozsusamlar Dec. ¶ 10). As a result of these issues, he was bedridden for about six weeks (*Id.*). Plaintiff was initially prescribed nasal spray and antibiotics, but these medications did not improve his condition (*Id.* 12). Plaintiff states that he was subsequently prescribed "Chlorphenisamine" by one Dr. Ladove -- Plaintiff understood that this medication was an antibiotic that would treat infection (*Id.* 14). However, despite the apparent prescription written by Dr. Ladove, Plaintiff asserts that Defendant cancelled the prescription for Chlorphenisamine, causing anger on the part of Dr. Ladove (*Id.* 15-16). Plaintiff states that he was unable to purchase over-the-counter medication for his condition and that he went without treatment (*Id.* 18). However:

> Finally, after suffering for several days from a swollen face, watering eye and pain in my head, a Pakistani inmate named Ali Chandia prepared a mixture of honey and raw onions that he collected from several inmates. This mixture finally cleared my infection after suffering in pain for several days (*Id.* 19).

Defendant's declaration and evidence from the medical record indicates that Defendant and other medical staff never considered Plaintiff's "head infection" to be any more serious than allergic rhinitis, or seasonal allergies (Szoke Dec. ¶ 36). Defendant notes that Chlorpheniramine was prescribed to Plaintiff by a Physician Assistant to treat his "allergic rhinitis, postnasal drip, pressure to ears, and watering eyes" (*Id.*). Defendant claims that he discontinued this prescription "because it was not on the BOP National Formulary." Instead, Defendant instructed Plaintiff to purchase antihistamines from the commissary (*Id.*). There is no indication in the record that Defendant was aware that Plaintiff lacked sufficient funds to purchase over-the-counter antihistamines to treat his condition. There is also no showing that Defendant was aware of

Plaintiff's 6 week illness beginning in August, 2008 that caused him to be bedridden.

A theme throughout Plaintiff's evidence is that he was not provided appropriate medical care because he was housed in the Communications Monitoring Unit (CMU) because he was suspected of terrorist activities. This explanation for lack of medical care is based on speculation and hearsay and is unsupported by any admissible evidence.

## LEGAL STANDARD

Summary judgment is only proper if the moving party can demonstrate that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. of Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). *See also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005); *Black Agents & Brokers Agency, Inc. v. Near North Ins. Brokerage, Inc.*, 409 F.3d 833, 836 (7th Cir. 2005). The moving party bears the burden of establishing that no material facts are in genuine dispute; any doubt as to the existence of a genuine issue must be resolved against the moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970). *See also Lawrence v. Kenosha County*, 391 F.3d 837, 841 (7th Cir. 2004).

A moving party is entitled to judgment as a matter of law where the non-moving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex*, 477 U.S. at 323. "A complete failure of proof concerning an essential element of a nonmoving party's case necessarily renders all other facts immaterial." *Id.* The Seventh Circuit has stated that summary judgment is "the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007) (quoting *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005) (other citations omitted)).

The Supreme Court has recognized that "deliberate indifference to serious medical needs of prisoners" may constitute cruel and unusual punishment under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). In order to prevail on such a claim, the Plaintiff must first show that his condition was (1) "objectively, sufficiently serious" and (2) that the "prison officials acted with a sufficiently culpable state of mind." *Greeno v. Daley*, 414 F.3d 645, 652-653 (7th Cir. 2005) (other citations omitted)).

Because the parties agree, for purposes of this Motion, that Plaintiff's conditions were objectively and sufficiently serious, the only question before the Court is whether Defendant was deliberately indifferent, that is, acted with a sufficiently culpable state of mind, to his serious medical needs. "Deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain.'" *Estelle*, 429 U.S. at 104 (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). "The infliction of suffering on prisoners can be found to violate the Eighth Amendment only if that infliction is either deliberate, or reckless in the criminal law sense." *Duckworth v. Franzen*, 780 F.2d 645, 652-53 (7th Cir. 1985). Negligence, gross negligence, or even "recklessness," as that term is used in tort cases, is not enough. *Id.* at 653. Put another way, the plaintiff must demonstrate that the official was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and that the official actually drew that inference. *Greeno*, 414 F.3d at 653. "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence . . . and a fact finder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Farmer v. Brennan*, 511 U.S. 825, 842 (1994) (citations omitted). "Even if the defendant recognizes the substantial risk, he is free from liability if he 'responded reasonably to the risk, even if the harm ultimately was not averted.'"

Page **8** of **14**

*Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010) (quoting *Farmer*, 511 U.S. at 843).

## DISCUSSION

The undisputed facts show that summary judgment is warranted as a matter of law with regard to Plaintiff's claim that Defendant was deliberately indifferent to his medical needs. Plaintiff has presented no evidence from which a jury would conclude that Dr. Szoke's treatment was plainly inappropriate or that he unnecessarily or wantonly inflicted pain as to Plaintiff's kidney stones, hernia, dental issues, or head infection.

### *Kidney Stones*

Plaintiff's argument implies that he suffered from constant pain from his kidney stones or that he suffered from one particularly painful kidney stone throughout his time at USP Marion. However, Plaintiff simply states that an x-ray identified one stone in April of 2011 and that Defendant denied him a urology consult sometime after that. The undisputed medical records reveal that Plaintiff suffered from a "hx" (history) of kidney stones and passed them frequently. He received regular medical care for his kidney stones by non-Defendants, he was given frequent tests to monitor his condition, and he was prescribed pain medication for the pain associated with the condition when he complained. It was Defendant's opinion that kidney stone distress did not warrant surgical intervention or urology consult unless the problem became "acute" – and, there is no showing that Plaintiff suffered from any condition that would render his kidney stones an acute problem. There is no showing that he had fever associated with the kidney stones, that he had a kidney infection, or that the kidney stones took longer than 24 hours to "pass."

While neither Dr. Szoke nor a reasonable jury would doubt that the passing of kidney stones can be very painful and that Plaintiff suffered pain, a reasonable jury would conclude that his complaints of pain were appropriately treated. The Seventh Circuit has held that even

"extreme pain" resulting from untreated kidney stones, when lack of treatment resulted from an inadvertent failure to provide adequate medical care, is not actionable under the Eighth Amendment. *England v. Farley*, 35 F.3d 568 (7th Cir. 1994). While the record reveals that Plaintiff's Ibuprofen was discontinued from August 2008, he was re-prescribed Ibuprofen on June 30, 2009 and then again on April 28, 2011 when he complained of pain. Plaintiff states that "Dr. Szoke made Mr. Ozsusamlar suffer in pain for years" but the evidence does not make out such a claim. Plaintiff's condition was monitored by a number of health professionals and he was given pain medication when he complained of pain from the kidney stones.

To the extent that Plaintiff insists that he should have undergone surgery, such a claim merely illustrates a difference of opinion than cannot sustain an Eight Amendment claim. Plaintiff's complaints amount to a disagreement over the treatment he received. According to the Seventh Circuit, a prisoner is not entitled to a specific treatment, or even the best care, only reasonable measures to meet the substantial risk of harm. *Cantella v. Clark*, 142 F.3d 439 (7th Cir. 1998). "Mere dissatisfaction or disagreement with a doctor's course of treatment" is not sufficient to hold Defendant liable for deliberate indifference. *Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006). Moreover, "a prison physician . . . is free to make his own, independent medical determination as to the necessity of certain treatments or medications, so long as the determination is based on the physician's professional judgment and does not go against accepted professional standards." *Holloway v. Delaware County Sheriff*, 700 F.3d 1063 (7th Cir. 2012). Just because Plaintiff believes that he was entitled to a urology consult or a different form of treatment is not competent evidence that Defendant was deliberately indifferent to his medical needs.

*Inguinal Hernia*

Plaintiff's complaints regarding his inguinal hernia, like his complaints regarding kidney stones, amount to a disagreement over the treatment he received from Defendant and medical staff. The undisputed facts show that Defendant is entitled to a judgment as a matter of law regarding Plaintiff's inguinal hernia deliberate indifference claim.

The Seventh Circuit has held that where a prisoner suffers from a reducible inguinal hernia, and where medical professionals deem surgery unnecessary and treat the condition through effective means, said medical professionals are not liable for deliberate indifference. *Johnson*, 433 F.3d at 1001. Deliberate indifference can be found, however, where a prisoner suffers continually from worsening symptoms, including pain, and is knowingly denied effective treatment. *See Gonzalez v. Feinerman*, 663 F.3d 311 (7th Cir. 2011); *Johnson*, 433 F.3d at 1013; *Greeno*, 414 F.3d at 655.

Here, Plaintiff simply asserts that Defendant recognized his inguinal hernia in 2008, ordered him to undergo tests and report to sick call, and eventually referred him for surgery consultation in June of 2012. Nowhere in Plaintiff's declaration does he state that he was in pain, or that his hernia was even a problem for him, much less that it was worsening. He simply claims that because his hernia existed, and because Defendant did not refer him for surgery consultation until June of 2012, that Defendant was somehow deliberately indifferent to his serious medical needs.

Defendant's unrefuted testimony reveals that Plaintiff was told, on repeated occasions, that his hernia was reducible and nonincarcerated. It was Defendant's professional opinion, as well as the opinion of other medical staff, that Plaintiff did not require surgical intervention for his reducible and nonincarcerated hernia from August 2008 until June of 2012. No evidence of

worsening symptoms or pain during this period has been presented. In June of 2012, Defendant acknowledges that he approved Plaintiff for a surgery consultation based on his professional opinion at the time and Plaintiff's persistent requests. Plaintiff was not able to receive this consultation until his transfer to FCI Fairton, a month later. At this surgery consultation, medical professionals at FCI Fairton deemed Plaintiff's inguinal hernia reducible and not worthy of surgical intervention. This result supports Defendant's treatment decisions regarding Plaintiff's inguinal hernia. Because Plaintiff's allegations regarding his inguinal hernia amount to nothing more than a disagreement over medical treatment, no jury would find that Defendant was deliberately indifferent to Plaintiff's inguinal hernia issue.

*Dental Complaints*

A simple review of the record indicates that Plaintiff's allegations toward Defendant are misplaced with regard to Plaintiff's dental problems. According to unrefuted testimony by Defendant, he acted as Clinical Director of USP Marion from November 12, 2006, to August 1, 2009, and again from August 29, 2010, to April 6, 2013. Defendant was not employed by USP Marion or by the Bureau of Prisons (BOP) in any capacity from August 2, 2009, to August 29, 2010. Plaintiff alleges that his eight-month stint of suffering due to lack of proper dental treatment began in July of 2009. According to Plaintiff's own timeline, Defendant was only around for a month of Plaintiff's alleged improper dental treatment at USP Marion.

Moreover, Defendant's unrefuted testimony shows that dental treatment procedures and dental staffing needs were handled by prison administration. There is no evidence that Defendant controlled or directed dental staffing or the procedures employed by the BOP to handle dental treatment. Further, there is no evidence that Defendant had any dental expertise or that he was capable to evaluating and treating Plaintiff's dental concerns. The Seventh Circuit has stated that

no liability will accrue for deliberate indifference where a prison official reasonably defers to a medical professionals' opinions. *Johnson*, 433 F.3d at 1010; *See also Greeno*, 414 F.3d at 656; *Lee v. Young*, 533 F.3d 505, 511 (7th Cir. 2008). Even if Defendant was the acting Clinical Director for a month period where Plaintiff allegedly received improper dental treatment, there is no showing that Defendant had any personal involvement in such care or that he was aware of the extent of Plaintiff's dental issues. Moreover, Plaintiff was being seen by dental professionals throughout the alleged time period. In light of Plaintiff's care by a specialist and not showing that Defendant was involved in that care, this claim must fail as a matter of law.

*"Head Infection"*

The record reveals contradicting theories between plaintiff and medical staff, including Defendant, regarding what Plaintiff deems a "head infection." According to plaintiff, this head infection was severe and persistent, causing him to be bedridden for six weeks. Plaintiff also asserts that treatment he received was ineffective, and that when new treatment was authorized by a staff physician, that treatment was cancelled by Defendant. Plaintiff claims that his suffering persisted until he was able to acquire a concoction of "honey and raw onions" from a fellow inmate.

Defendant seems to brush off Plaintiff's allegations regarding his "head infection" by deeming seasonal allergies as the sole culprit. Defendant claims that he cancelled Plaintiff's treatment because the prescribed medication was "non-formulary," and asserts that Plaintiff could have procured over-the-counter medication. When submitting a claim for deliberate indifference, a plaintiff does not have to prove that his complaints were "literally ignored," but only that "the defendants' responses were so plainly inappropriate as to permit the inference that the defendants intentionally or recklessly disregarded his needs." *Hayes v. Snyder*, 546 F.3d 516, 524 (7th Cir.

2008) (quoting *Sherrod v. Lingle*, 223 F.3d 605, 611 (7th Cir. 2000).  If Plaintiff suffered from a condition that caused him to be confined to his bed for 6 weeks and Defendant only treated such a condition with instructions to acquire antihistamines from the commissary, a jury may conclude that Defendant was deliberately indifferent.

The evidence does not reveal that Dr. Szoke was either aware of the results of Plaintiff's condition (being bedridden) or that he was aware that Plaintiff did not have the funds to acquire the necessary over-the-counter medication.  There is no evidence that Dr. Szoke was aware of a serious medical condition and failed to take adequate steps.  And, notwithstanding Plaintiff's belief as to the nature of the Chlophenisamine and its uses, there is no evidence that it could not be properly substituted for an antihistamine that could have been acquired from the commissary.  This claim requires no further consideration.

## Conclusion

For the foregoing reasons, the Motion for Summary Judgment filed by Defendant, Dr. David Szoke, on March 14, 2014 (Doc. 56) is **GRANTED.**  The Clerk is **DIRECTED** to enter judgment in favor of Defendant and against Plaintiff and to close this case.

**IT IS SO ORDERED**

**DATED: March 30, 2015**

                                                **DONALD G. WILKERSON**
                                                **United States Magistrate Judge**